IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| RHONDA BLANDFORD, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF C.S., ON BEHALF OF HERSELF, AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>UOFL HEALTH, INC. AND UNIVERSITY OF LOUISVILLE PHYSICIANS D/B/A UOFL PHYSICIANS,<br><br>Defendants; | ) | Case No. 3:23CV-192-DJH<br><br>[Removal from: Jefferson Circuit Court, Jefferson County, Kentucky, Case No. 23-CI-001809]<br><br>(*Electronically Filed*) |

**NOTICE OF REMOVAL**

This case is one of many similar cases pending in federal courts across the country relating to healthcare organizations' efforts taken in connection with the federal government's directive to build a nationwide health information technology infrastructure and expand the use of electronic health records. Here, Plaintiff, Rhonda Blandford and C.S. ("Plaintiff"), on behalf of a putative class, seek recovery from Defendants, UofL Health Inc. and University of Louisville Physicians d/b/a UofL Physicians ("UofL Physicians," together with UofL Health Inc., "UofL Health") claiming that, through use of a code known as the "Meta Pixel," UofL Health transmitted patients' sensitive protected health information ("PHI") "in violation of state and federal laws." *See Compl.*, at 4.

According to Plaintiff, UofL Health utilizes the Meta Pixel on its general public website, uoflhealth.org, and within its online patient portals (together, the "UofL Health Websites") and

transfers PHI, including Plaintiff's PHI, to Facebook. *See Compl.*, at 42-60.[1] Despite having no factual basis for the conclusory allegations, Plaintiff contends that UofL Health failed to comply with federal industry standards set forth by the Federal Trade Commission ("FTC"), the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d *et seq*. ("HIPAA"), HIPAA regulations, and guidance outlined in the HHS Bulletin. *See* Compl. ¶¶ 34-46, 61-79. These federal standards are the basis for Plaintiff to purport that UofL Health violated Kentucky law. Such claims belong in federal court.

Therefore, UofL Health removes this action from Jefferson Circuit Court to the United States District Court for the Western District of Kentucky, Louisville Division, with full reservations of all defenses, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446. In support of removal, UofL Health provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basis Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## NATURE OF THE CASE

1. On March 21, 2023, Plaintiff filed a class action complaint against UofL Health in Jefferson Circuit Court in Louisville, Kentucky, Case No. 23-CI-001809 (the "Complaint").

2. According to Plaintiff, UofL Health operates the UofL Health Websites, and collects and stores PHI of patients and visitors, including "Plaintiff and the proposed Class Members." *Id.*, at ¶ 18.

[1] Plaintiff bases these conclusory allegations primarily on an article featured on TheMarkup regarding hospitals using Meta Pixel to collect patients' PHI and a bulletin issued by the United States Department of Health and Human Services, Office for Civil Rights ("HHS") providing guidance on how to best use these online technologies ("HHS Bulletin"). *See* Compl., at ¶¶ 31-41. Notably, the article does not mention UofL Health as one of the medical providers to share PHI with Facebook. *See generally* PIXEL HUNT, *Facebook Is Receiving Sensitive Medical Information from Hospital Websites*, https://themark-uo.orgtoixel-hunt/2022/06/16/facebook-is-receiving-sensitive-meclical-informationfrom-hospital-websites (last visited April 13, 2023) (hereafter, "Pixel Hunt")..

3. Plaintiff asserts that the PHI collected and stored "includes names, addresses, birth dates, insurance information, medical record numbers, patient account numbers, physician names, dates of service, diagnoses, treatment information, driver's license numbers, and Social Security numbers." *Id.*, at ¶ 19.

4. Plaintiff also asserts that C.S., is a former and current patient of UofL Health, and shared C.S.' PHI with UofL Health. *Id.*, at ¶¶ 47-48. According to Plaintiff, over a three-year period, since November 2020, she used UofL Health Websites to find doctors and hospitals, schedule appointments, search for treatment information, pay for medical services, and confirm contact information for a neurologist. *Id.*, at ¶¶ 49-50. Plaintiff alleges that UofL Health transmitted C.S.' PHI to "Facebook via the Meta Pixel, when she engaged with the UofL Health website that uses the Meta Pixel." *Id.*, at ¶ 52.

5. According to Plaintiff, UofL Health installed the Meta Pixel software code "to further its marketing and ad targeting goals to collect information." *Id.*, at ¶ 52. *See also id.*, at ¶ 5 (alleging that "UofL Health benefits from the ability to analyze its patients' experience and activity on its website to assess the website's functionality and traffic. UofL Health also gains information about its patients through the Meta Pixel that can be used to target them with advertisements as well as measure the results of advertisement efforts.").

6. Based on these allegations, Plaintiff contends that UofL Health failed to comply with federal industry standards set forth by FTC, HIPAA, and HHS via the HHS Bulletin. *See* Compl. ¶¶ 34-46, 61-79.

7. With federal law as the basis, Plaintiff's eight-count Complaint purports to challenge UofL Health's routine online practices on the UofL Health Websites as claimed violations of a plethora of Kentucky laws, including the Kentucky Consumer Protection Act, KRS

§ 367.110, *et seq*. and Notification of Computer Security Breach, KRS 365.732. *See* Compl., at ¶¶ 95-202. Plaintiff's Complaint must be removed to federal court for at least two reasons.

8. First, in 2004, the federal government implemented a goal— through executive order, legislation, and administrative programs—to develop a nationwide infrastructure for health information technology ("health IT") and electronic health records. As part of this initiative, the federal government created its own patient portal and sought to increase its utilization among patients through targeted advertising. Private healthcare providers have been incentivized—with special payments—by the federal government to do the same in order to expand patients' use of portals and access to electronic health records in meaningful ways. This case challenges techniques and practices that the federal government and the providers it pays use to meet that goal. Therefore, this action is removable pursuant to 28 U.S.C. § 1442(a)(1).

9. Second, actions involving a federal issue—like this one—should proceed in federal court. As detailed below, because a federal issue is: (1) necessarily raised, (2) disputed by Plaintiff, (3) substantial to this litigation, and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," this action is also removable under 28 U.S.C. § 1331. *See Gunn v. Minton*, 568 U.S. 251, 258, (2013).

## BASIS FOR REMOVAL

### I. REMOVAL IS PROPER PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1).

10. Pursuant to 28 U.S.C. § 1442(a), removal is permitted when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an official or individual capacity, for or relating to any act under color of such office …" 28 U.S.C. § 1442(a)(1).

11. The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is to be broadly construed, and removal should be permitted when defendants are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (hereafter, "*Manypenny*"). Indeed, "[t]he federal officer removal statute reflects a congressional decision to ensure that a federal officer is tried on state law issues without local prejudices impinging the fairness of the trial and to enable the defendant to 'have the validity of his immunity defense adjudicated, in a federal forum.'" *Stallings v. Georgia-Pacific Corp.*, 2013 WL 1563231, at *2 (W.D. Ky. Apr. 12, 2013) (quoting *Manypenny*, 451 U.S. at 242); *accord Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006); *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 286-87 (6th Cir. 2016)).

12. Federal officer removal in the Sixth Circuit is proper where the removing party establishes that: (i) it is a "person" within the meaning of the statute who "acted under a federal officer"; (ii) "it performed the actions for which it is being sued under color of federal office"; and (iii) "it raised a colorable federal defense." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (internal citations omitted); *see also Stallings v. Ga.-Pacific Corp.*, No. 3:12-CV-00724-H, 2013 U.S. Dist. LEXIS 52870, at *4-5 (W.D. Ky. Apr. 11, 2013). All three requirements are satisfied here.

13. Notably, two other federal courts have found removal to be appropriate under the federal officer removal statute on the same basic putative class action complaint claiming website privacy violations. *See Doe, et al. v. UPMC*, 2020 U.S. Dist. LEXIS 136077, at *24 (W.D. Pa. July 31, 2020), *interlocutory appeal denied*, 2020 U.S. Dist. LEXIS 176222 (W.D. Pa. Sep. 25, 2020) (noting that UPMC was 'acting under' DHHS in reference to its compliance with the "Meaningful Use" program.); *see also Doe v. ProMedica Health Sys., Inc.*, 2020 U.S. Dist.

LEXIS 244916, at *6 (N.D. Ohio Oct. 30, 2020), *appeal denied*, 2020 U.S. Dist. LEXIS 244914 (N.D. Ohio Dec. 14, 2020).

**A. The Meaningful Use Program**

14. In 2004, President Bush, by executive order, established the National Health Information Technology Coordinator ("ONC") to incentivize "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *See* Exec. Order 13335 (Apr. 27, 2004), available at https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf, last visited April 12, 2023.

15. Congress then codified the ONC in the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH Act"). *See* 123 Stat. 115, 247 (2009) (codified at 42 U.S.C. § 300jj-31). As a result, billions of dollars were allocated by Congress to the Centers for Medicare & Medicaid Services ("CMS") to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id.*

16. Furthermore, private providers receive guidance from the ONC, including five-year strategic plans. For example, in the 2015-2020 plan, ONC dictated that "federal agencies" were to "*collaborate with* . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf, last visited April 12, 2023 (emphasis added).

17. ONC noted in the 2020-2025 plan that the federal government and private sector "have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025*, available at https://www.healthit.gov/sites/

default/files/page/202010/Federal%20Health%20IT%20 Strategic %20Plan_2020_2025.pdf, last visited April 12, 2023.

18. The CMS' "Meaningful Use" program (now known as the Promoting Interoperability Program, or "PIP"), 42 C.F.R. § 495.2-495.370, aims to increase patients' "meaningful use" and engagement with electronic health records. Thus, the program is essential to the federal government's goal.

19. Indeed, the PIP mandates that providers meet specific criteria to receive full Medicare reimbursement, including an interoperable patient portal. Providers receive incentive payments if they can reach a certain level of engagement with electronic health record use through the patient portal.

20. It is suggested that providers implement patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records. *See*, *e.g.*, ONC, *Patient Engagement Playbook*, available at https://www.healthit.gov/playbook/pe/introduction/ ("Patient portals hold enormous potential to improve patient care and practice workflow."), last visited April 12, 2023.

21. To best optimize portals, the ONC has stated that they "must be engaging and user-friendly." Furthermore, ONC stated "how a patient portal helps achieve meaningful use requirements" and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement* available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf, last visited April 12, 2023.

22. CMS maintains its own patient portal for individuals who access care through traditional Medicare—MyMedicare.gov. Similarly, the Department of Veteran Affairs ("VA") maintains its own portal for veterans, My HealtheVet.

23. Leading by example, CMS relies on third-party marketers, including Facebook, to optimize individual engagement with the portal. *See generally* Medicare.gov, Privacy Policy, available at https://www.medicare.gov/privacy-policy, last visited April 12, 2023. CMS identifies *over 20* third parties that it uses for advertising, web analysis, social media outreach, and privacy management in conjunction with Medicare.gov and MyMedicare.gov. *See id.*, *Privacy Information Regarding Third-Party Services,* available at https://www.medicare.gov/third-party-privacy-policies, last visited April 14, 2023.

24. Notably, this would include many of the same third-party cookies and source code alleged as unlawful in the Complaint. *See id. See also* HHS, *Third Party Websites and Applications Privacy Impact Assessment–Facebook Ads* (Sept. 4, 2018) available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-facebook-ads.html, last visited April 12, 2023 (illustrating how CMS engages Facebook to "place[] a cookie or pixel . . . for conversion tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the performance of CMS advertisements based on consumer activity and to report the ad performance to CMS.").

**B. UofL Health is a "Person."**

25. Pursuant to 42 U.S.C. § 1442, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

26. Although the statute does not define a "person," corporate entities have routinely removed under this provision and considered a "person" under the statute. *See*, e.g., *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007); *Bennett*, 607 F.3d at 1085-86.

27. UofL Health consists of nonprofit organizations existing under the Commonwealth of Kentucky, Compl., at ¶¶ 10-11, and therefore, a person under 42 U.S.C. § 1442.

**C. UofL Health is Acting Under a Federal Officer.**

28. For this requirement, "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks." *Watson*, 551 U.S. at 152 emphasis in original). UofL Health meets this requirement.

29. Indeed, UofL Health (along with countless other entities) is "helping the government produce" the nationwide, interoperable information technology infrastructure for health information. *See* CMS, *Promoting Interoperability Programs*, 2020-2025 Strategic Plan (The federal government acknowledging the private sector's role "to help digitize health information and healthcare.").

30. The federal government has also guided the private sector on how best to enhance patient engagement. Furthermore, through its own engagement with third-party services, the federal government has modeled the behavior that private entities are to follow. Here, UofL Health has followed the federal government's example when implementing the UofL Health Websites.

31. Two other federal courts have found that similar providers have satisfied the "acting under" prong on the same basis. *See UPMC*, 2020 U.S. Dist. LEXIS 136077, at *24 ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct at issue in the Complaint."); *ProMedica*, 2020 U.S. Dist. LEXIS 244916, at *6 ("Because Defendant's participation assisted the federal government in achieving that goal [to create a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

**D. Plaintiff's Claims Relate to Actions Under Color of Federal Office.**

32. Pursuant to Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office.

33. As set forth above, Plaintiff's Complaint directly challenges UofL Health's alleged website analytics practices and whether it complies with federal law.

34. Plaintiff's Complaint also generally targets UofL Health's alleged use of software code and cookies, along with the use of marketing companies in conjunction with its public medical website. Even assuming Plaintiff's allegations were true, this—as manifested by the government's own use of these third parties—is precisely what the PIP envisions.

35. Indeed, according to the Plaintiff's Complaint, the entire point of using the third-party services is to direct traffic to, and increase engagement with, UofL Health Websites. *See* Compl., at ¶ 5 (alleging, "[s]pecifically, UofL Health benefits from the ability to analyze its patients' experience and activity on its website to assess the website's functionality and traffic. UofL, Health also gains information about its patients through the Meta Pixel that can be used to target them with advertisements as well as measure the results of advertisement efforts."). *See also id.*, at ¶ 52 (according to Plaintiff, UofL Health installed the Meta Pixel software code "to further its marketing and ad targeting goals to collect information.").

36. This infringement on a federal prerogative is precisely the type of case that "relates to" or is "undertaken for" federal office. *See ProMedica*, 2020 U.S. Dist. LEXIS 244916, at *6-7 (finding that defendant established a causal nexus by demonstrating "that the actions for which it is being sued were performed 'under the color of federal office.'"). *See also UPMC*, 2020 U.S. Dist. LEXIS 136077, at *18-19 ("There is plainly a connection or association between [the health care provider's] website management and marketing strategies and the PIP, particularly the incentives that are tied to patient participation and usability.").

**E. UofL Health Raises Colorable Federal Defenses to Plaintiff's Claims.**

37. The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. California*, 489 U.S. 121, 129-30 (1989). Indeed, "a colorable federal defense need only be plausible . . . and that a district court is not required to determine its validity at the time of removal." *Bennett*, 607 F.3d at 1089 (citations omitted).

38. UofL Health will assert several colorable federal defenses to the claims at issue here that satisfy this requirement.

39. First, UofL Health will argue that it did not violate any duty under HIPAA. Plaintiff identifies UofL Health as a covered entity under HIPAA, and purport that UofL Health violated HIPPA's standard of care. *See* Compl., at ¶¶ 72-79. Furthermore, UofL Health will argue that specific information that is purportedly "disclosed" are outside of the purview of protected health information as defined by HIPPA. This defense turns on an interpretation of federal law and is, therefore, sufficient to satisfy this element.

40. Second, certain state-law privacy standards are preempted under HIPAA. *See* 45 C.F.R. § 160.203. The possibility of preemption is also enough to present a federal defense for removal purposes. *See Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003) (holding that removal is permitted on the basis of preemption). Here, whether or not Kentucky's privacy standards are preempted under HIPAA will require the interpretation of a federal statute.

41. Third, the entire nature of UofL Health's involvement in the PIP is "inherently federal in character because the relationship" between UofL Health and HHS "originates from, is governed by, and terminates according to federal law." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (holding that state law claims stemming from defendant's representations to a federal agency were preempted). There, UofL Health is entitled to federal

judicial review to assess allegations that implicate its relationship with HHS and involvement in the PIP. *Id.*

42. Fourth and finally, the dormant Commerce Clause "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). Accordingly, "a state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Healy v. Beer Inst.*, 491 U.S. 324, 332 (1989). And, "[b]ecause the internet does not recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet activities without 'projecting its legislation into other States.'" *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) (citing *Healy*, 491 U.S. at 334). Presently, UofL Health collaborates with providers and "professionals throughout the country and in some cases the world…." *See* Compl., at ¶ 17. Despite the Complaint limiting potential Plaintiffs to Kentucky citizens, patients may come to UofL Health from any number of localed outside of this Commonwealth. The UofL Health Websites provide an easily accessible, interstate (and international) platform by which providers, patients, and others can manage or learn more about their or others' healthcare. Yet, according to Plaintiff, Kentucky law restricts how UofL Health can design and manage its websites. The Dormant Commerce Clause prohibits Kentucky from reaching beyond its borders in that way.

## II. REMOVAL IS ALSO PROPER PURSUANT TO 28 U.S.C. § 1331 - FEDERAL QUESTION.

43. Removal of this action to federal court is also proper under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiff asserts claims "arising under" federal law. 28 U.S.C. § 1331.

44. Although Plaintiff's Complaint only asserts state-law claims, those claims are nevertheless intertwined with a substantial federal issue. In *Gunn v. Minton*, the Supreme Court set forth the requirements for determining whether federal jurisdiction over a state-law claim exists. 568 U.S. 251, 258 (2013) ("federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."). *See also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007). Those requirements are met here.

45. Indeed, a federal issue is both necessarily raised and disputed by Plaintiff because federal law exclusively governs the standards purportedly violated by UofL Health. *See* Compl. ¶¶ 61-79 (Plaintiff alleging that UofL Health failed to comply with standards set by Federal FTC and HIPAA. *See also id.*, ¶¶ 34-46 (Plaintiff references the HHS Bulletin to purport UofL Health violated HIPAA).

46. The federal issue here is substantial because, as set forth above, at the crux of Plaintiff's claims is that UofL Health failed to comply with standards and regulations set forth by the FTC, HIPAA, and the HHS Bulletin. *See id.* Furthermore, Plaintiff challenges the techniques and practices that UofL Health has taken in connection with the federal government's effort to build a nationwide health IT infrastructure and expand the use of electronic health records. The federal issue here is also substantial because it will resolve the case and is not merely a trivial aspect of this case. *Mikulski*, 501 F.3d at 570.

47. Finally, the exercise of jurisdiction would not disturb any congressionally approved balance of federal and state judicial responsibilities because the purported standards violated are federal standards—not state. *See* Compl. ¶¶ 34-46, 61-79.

48. Therefore, Plaintiff's allegations satisfy the prerequisites for removal pursuant to 28 U.S.C. § 1331.

**COMPLIANCE WITH PROCEDURAL REQUIREMENTS**

49. UofL Health satisfies all of the procedural requirements for removal under 28 U.S.C. §1446.

50. Plaintiff served the Complaint on Defendant, University of Louisville Physicians on March 27, 2023 and UofL Health, Inc. on March 29, 2023. UofL Health is filing this Notice of Removal within thirty (30) days of that date; therefore, this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

51. UofL Health files this Notice in the United States District Court for the Western District of Kentucky, because the State court in which the action is pending, Jefferson Circuit Court, is within this federal judicial district.

52. A copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached hereto as exhibits in accordance with 28 U.S.C. § 1446(a).

53. In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, UofL Health will "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of Jefferson Circuit Court. A true and correct copy of the Notice to Plaintiff and Notice to the State Court of Filing of Notice of Removal will be filed as separate documents.

54. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of UofL Health's right to assert any and all defenses or objections to the Complaint, including but not limited to Plaintiff's class allegations.

55. If there are any questions that arise as to the propriety of removal of this action, UofL Health respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal of this case.

Respectfully submitted,

*/s/ Aaron W. Marcus*

Benjamin J. Lewis (KBA #93491)
Aaron W. Marcus (KBA #96178)
Kyle Miller (KBA #97724)
Lincoln J. Carr (KBA #98017)
DENTONS BINGHAM GREENEBAUM LLP
101 South Fifth Street
3500 PNC Tower
Louisville, Kentucky 40202
(502) 589-4200
ben.lewis@dentons.com
aaron.marcus@dentons.com
kyle.miller@dentons.com
lincoln.carr@dentons.com

*COUNSEL FOR DEFENDANTS UOFL HEALTH INC. AND UNIVERSITY OF LOUISVILLE PHYSICIANS D/B/A UOFL PHYSICIANS*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing will be electronically served on the following through the Court's electronic filing service on this 17th day of April, 2023:

J. Gerard Stranch, IV
Andrew E. Mize
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
Gstranch@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops
Amina A. Thomas
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

Samuel J. Strauss
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
(608) 237-1775
(608) 509-4423 (facsimile)
sam@turkestrauss.com
raina@turkestrauss.com

*COUNSEL FOR PLAINTIFF AND THE PROPOSED CLASS*

*/s/ Aaron W. Marcus*
*COUNSEL FOR DEFENDANTS, UOFL HEALTH INC. AND UNIVERSITY OF LOUISVILLE PHYSICIANS D/B/A UOFL PHYSICIANS*